**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

09-3331
_____

JIAN ZHAU ZHENG,
Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review from the Board of Immigration Appeals
BIA No. A070-838-800

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 16, 2010

Before: SLOVITER, BARRY, and SMITH, *Circuit Judges*

(Filed: October 4, 2010)

_____

OPINION

_____

Smith, *Circuit Judge*.

In *Zheng v. Attorney General*, 549 F.3d 260 (3d Cir. 2009), this Court concluded

that the Board of Immigration Appeals ("BIA") erred in denying Jian Zhau Zheng's

second motion to reopen, and we remanded the matter for further proceedings.  On

1

remand, the BIA again denied the motion to reopen. Zheng once more seeks our review. We will vacate the BIA's decision and remand for further proceedings.

## I.

Zheng, a native and citizen of the People's Republic of China, entered the United States in 1993 and applied for political asylum based on his involvement in the Student Democratic Movement in 1989. Although a hearing was conducted in 1995, the transcript was lost and a second IJ hearing was scheduled in March of 1997. Counsel appeared at the second hearing, but Zheng did not. As a result, the IJ entered an order of exclusion *in absentia*. Zheng's appeal to the BIA was denied as untimely on December 18, 1997, and he did not seek review in this court.

On January 23, 1998, Zheng married Cui Zhu Cheng, who is also a native and citizen of China. She delivered a daughter, Sandy, within a week of the date of their marriage. A second daughter, Judy, was born the following year on January 4, 1999. The third child, a son named Kevin, arrived on June 21, 2000.

Zheng filed his first motion to reopen in June of 2002, asserting that the untimeliness of his motion was excused because of a change in country conditions.[1] His motion, however, presented only a change in his personal circumstances as a result of

---

[1] Under the regulations, an alien generally may file with the BIA one motion to reopen his proceeding and that motion must be filed within 90 days of the date of the final administrative decision. 8 C.F.R. § 1003.2(c)(2). The numeric and time limitations do not bar a motion to reopen, however, if it is "based on changed circumstances arising in the country of nationality . . . if such evidence is material and was not available . . . at the previous hearing[.]" *Id.* § 1003.2(c)(3)(ii).

having three children.  The BIA denied the motion.

Four years later, in August of 2006, Zheng filed a second motion to reopen, together with an application for political asylum.  He asserted that this second motion to reopen was not barred by the numeric and time limitations set forth in 8 C.F.R. § 1003.2(c)(2) because there had been an increase in the Chinese government's imposition of forced abortions and sterilizations, which constituted a change in country conditions.  Citing the fact that he had three children, Zheng claimed that he would be found in violation of China's Population and Family Planning Law if he was repatriated to China and would be subjected to an involuntary sterilization procedure. As support,  Zheng attached to his motion nine documents.

In a decision dated June 21, 2007, the BIA denied Zheng's second motion to reopen.  It declared that the birth of Zheng's three children in the United States did not constitute a change in country conditions that would permit filing this second motion to reopen.  As authority for the denial, the BIA cited *Matter of J-W-S*, 24 I. & N. Dec. 185 (BIA 2007).  Zheng filed a timely petition for review.

In a decision dated November 26, 2008, this Court granted Zheng's petition for review, vacated the BIA's decision, and remanded the matter for further consideration. 549 F.3d at 269.  After discussing the numeric and time limitations applicable to motions to reopen, we noted the three grounds for denying a motion to reopen and declared that "regardless of which of these multiple bases for denying a motion to reopen that the BIA is examining, when considering a motion to reopen the BIA 'must actually consider the

evidence and argument that a party presents.'" *Id.* at 266 (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001)). We noted that the "BIA did little more than quote passages from its earlier decision in *J-W-S* without identifying-let alone discussing-the various statements contained in the record before it that Zheng submitted in support of his motion to reopen." *Id.* at 268. We pointed out that the

> BIA did not mention Zheng's affidavit, the Changle City letter, the Consular Information Sheet from 2003, the Commission Report for 2005, the Fujian Regulation from 2002, Wu's testimony to Congress from 2004, or the two newspaper articles. Moreover, these documents were not discussed in *J-W-S*, the case on which the BIA almost exclusively relied. Given the BIA's failure to discuss most of the evidentiary record in Zheng's case, as well as the conclusions that the Court of Appeals . . . reached in *Li* concerning at least some of the documents in this case, we will vacate the BIA's denial of Zheng's second motion to reopen his case and remand the matter to the BIA for further proceedings.

*Id.* at 268-69 (citing *J-W-S*, *supra*, and *Li v. Attorney General*, 488 F.3d 1371 (11th Cir. 2007)).

On remand, in February of 2009, Zheng submitted fourteen additional documents in support of his motion to reopen. In a decision dated July 28, 2009, the BIA again denied Zheng's second motion to reopen. It listed the nine documents initially submitted, as well as the fourteen documents submitted on remand. The BIA observed that some of the evidence was either unauthenticated or incomplete, and specifically noted that it had already considered some of the supplemental documents in other BIA decisions. In addition, the BIA acknowledged that we had criticized it for failing to address certain evidence initially and declared that

4

> [t]he applicant's evidence is not authenticated, not corroborated, incomplete, and not fully consistent with recent government reports on China. Unlike the finding . . . in *Li* . . . that the alien's "other evidence corroborated her anecdotal evidence of a change in policy in her province and substantiated her fear that local officials in Fujian have the incentives and discretion to sterilize women with more than one child," we find that the applicant's evidence is insufficient to corroborate his anecdotal evidence of such a change in the family planning policy or to substantiate his fear of sterilization.

The BIA determined that Zheng did not satisfy his burden of proving that his proceedings should be reopened, and it also stated that "an exercise of *sua sponte* authority to reopen [wa]s not warranted." This timely petition for review followed.

## II.

The BIA had jurisdiction under 8 C.F.R. § 1003.2(c). We have jurisdiction under 8 U.S.C. § 1252(a). We review a denial by the BIA of a motion to reopen for an abuse of discretion. *Zheng*, 549 F.3d at 264-65.

## III.

Because Zheng's motion to reopen is barred by both the time and numeric limitations, there are "two related but analytically distinct issues" before us:

> (1) whether [Zheng] has presented evidence of changed country conditions sufficient to allow him to file a motion to reopen . . . and (2) whether the new evidence [Zheng] has presented and the prior evidence in the record together show that he has a reasonable likelihood of prevailing on his asylum claim, *i.e.*, whether he has presented a *prima facie* case for asylum. The first is a threshold question . . . .

*Shardar v. Attorney General*, 503 F.3d 308, 312 (3d Cir. 2007) (footnote omitted). There is no doubt that Zheng submitted ample new evidence, presenting nine documents

5

initially with his second motion to reopen, and an additional fourteen documents upon remand. We are unable to determine, however, whether the BIA is correct that this evidence failed to demonstrate a change in country conditions. The BIA seemed to focus on our observation that it "did not mention" seven of the nine documents initially presented. *Zheng*, 549 F.3d at 268. It listed all of the evidence offered by Zheng, went on to note that some of this evidence was not authenticated or incomplete, observed that other evidence had been considered in earlier decisions by the Board, and set forth some observations about Zheng's affidavit, the 2005 Country Report, and the 2003 Consular Information Sheet. The BIA then summarily concluded that Zheng's evidence was insufficient. It is unclear to us, however, whether the BIA followed our directive that it "'must actually consider the evidence and argument that a party presents.'" *Id.* at 266 (quoting *Abdulai*, 239 F.3d at 549).

The BIA's approach is deficient because it completely fails to examine the submitted evidence and to determine whether it supports Zheng's claim that conditions in China have changed. We remanded this case because the BIA did not "discuss most of the evidentiary record[.]" 549 F.3d at 269. The BIA's decision following remand still lacks any reasoned discussion of either the initial submissions from Zheng or the additional fourteen documents submitted on remand. Without a substantive analysis by the BIA of the evidence adduced by Zheng, we are unable to discern its reasons for denying the motion to reopen. *See Filja v. Gonzales*, 447 F.3d 241, 256 (3d Cir. 2006) (reiterating that the BIA is "required [to] consider the issues raised, and announce its

6

decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted") (internal quotation marks and citation omitted).  Indeed, we note that  8 C.F.R. § 1003.2(c)(3)(ii) provides that reopening may be granted if "material" evidence establishes changed country conditions.  This materiality requirement contemplates a qualitative assessment by the BIA of the evidence submitted.  Because the BIA has still not conducted such an assessment, we will vacate its decision and remand yet again so the BIA may address Zheng's evidence and explain whether that evidence supports his claim of changed country conditions and thereby warrants reopening his exclusion proceeding.